UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAYMOND SERRANO,

                Plaintiff,

v.                                                Case No. 23-cv-1140-pp

DODGE CORRECTIONAL INSTITUTION,

                Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT**

      Raymond Serrano, an individual who formerly was incarcerated at Dodge Correctional Institution[1] and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant was deliberately indifferent to his medical needs. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

      The plaintiff was not incarcerated when he filed his complaint. That means that the Prison Litigation Reform Act does not apply to this case, and the court will evaluate the plaintiff's request to proceed without prepaying the filing fee under 28 U.S.C. §1915(a).

---

[1] The Wisconsin Department of Corrections locator website indicates that the plaintiff was released on extended supervision on July 25, 2023. https://appsdoc.wi.gov/lop/details/detail (last visited October 16, 2023). The plaintiff listed a West Allis, Wisconsin address in his complaint. Dkt. No. 1 at 1, 6

The plaintiff's Non-Prisoner Request to Proceed in District Court Without Prepaying the Filing Fee says that he is not employed and is not married. Dkt. No. 3 at 1. He says he has a three-year-old daughter for whom he is responsible, and he receives $400 per month in support. Id. He does not list any monthly income, but he lists monthly expenses of $900 in rent, $200 in court-ordered alimony and $300 in household expenses. Id. at 2. He says he does not own his home, does not own a car and has no cash, checking, savings or other accounts. Id. at 3.

The civil case filing fee is $402 (including a $52 administrative fee that plaintiffs proceeding without prepaying the filing fee are not required to pay). Requiring the plaintiff to pay this fee would impose a significant financial hardship on him. The court will grant his motion to proceed without prepaying the filing fee. Dkt. No. 3. The plaintiff must pay the full $350 filing fee over time as he is able.

## II. Screening the Complaint

### A. Federal Screening Standard

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint alleges that while at Dodge, the plaintiff was complaining about severe abdominal pain. Dkt. No. 1 at 2. He says he "kept knocking on the door for help and the guard who was on duty at the time was ignoring [him] on her phone." Id. (The complaint does not identify this female guard.) The plaintiff says that after thirty minutes, the guard finished her phone call and came to his cell. Id. He told the guard he "was having a medical emergency and she said she would call the nurse." Id. The guard spoke with a nurse, after which the "officer" told the plaintiff that he "wouldn't be seen until an hour and a half after count." Id. The plaintiff asserts that it took fifteen minutes for "count to clear." Id. He says he "had to walk to H.S.U[.] in pain," had a high fever and "was throwing up a thick white foam at the health center." Id. The nurse told the plaintiff that "she had been doing this for over '20 years,'" and that the plaintiff's symptoms had nothing to do with his appendix; she said he

would be fine to return to his cell. Id. at 2–3. The nurse sent the plaintiff back to his cell with Tylenol and Tums. Id. at 2.

The plaintiff alleges that two hours later, he could not "get back up," and was hunched over from "the sharp and throbbing pain." Id. He says he was still vomiting white foam. Id. He again knocked on his door for help, but no one came to his cell for another hour and a half. Id. The plaintiff alleges that he "was crying, holding [his] stomach in pain." Id. His cellmate also was kicking and knocking at the door. Id. The plaintiff says that when an officer finally come to the cell door, she told the plaintiff that she had to speak to her captain. Id. She left and returned an hour and twenty minutes later with her captain, a nurse and other guards. Id. The plaintiff says that the nurse examined the plaintiff and noticed that his stomach "was lopsided." Id. She said he "needed medical attention from a nearby hospital." Id. The plaintiff alleges that it took another ninety minutes for him to be taken to the hospital, where he was connected to an IV and learned that he needed emergency appendix surgery. Id. The plaintiff alleges that the doctor told him that if "they would have waited any longer, [his] appendix would've bursted [*sic*] inside of [him]." Id. at 4. He nonetheless had to wait eleven hours for surgery, and he alleges that he "was in excruciating pain the entire time." Id. at 3.

The plaintiff alleges that an hour after his surgery, he was taken back to Dodge "with no pain medications for an entire 24 hrs." Id. He was "still expected to sleep on the top bunk," and Dodge staff "made no effort to make accommodations while [he] was healing." Id. at 3–4. The plaintiff says he "feared for [his] life and felt like [he] was at risk of dying at some point." Id. at 4. He says he felt neglected, alone, scared and in pain. Id. He says he did not receive any medical follow-up, a change of the dressings covering his surgery

wounds or any after-care. Id. The plaintiff alleges he "was too weak and in pain to do it on [his] own, so [his] incisions got infected." Id. He also did not receive his medical discharge papers until thirty to forty days after the surgery, and he alleges that "[s]ome documents they weren't trying to give [him]." Id. The plaintiff alleges that although he no longer is in prison, he still has difficulty breathing stretching, lifting and bending over. Id.

The plaintiff seeks monetary damages. Id. at 5. He explains that if he were awarded damages, he would be able to pay off his debts, pay his child support and use the money to "earn a degree in a long-term life skill" and "possibly start a business." Id.

    C.    Analysis

Although the plaintiff does not indicate when the events described in the complaint occurred, the Wisconsin Department of Corrections locator indicates that the plaintiff was in Dodge Correctional Institution from April 4, 2018 to June 7, 2018, and again from March 1, 2023 to May 4, 2023. https://appsdoc.wi.gov/lop/details/detail (last visited October 16, 2023). It appears that both times, he was in the prison as a criminally convicted person and not a pretrial detainee; in April 2018 he was admitted "with New JOC [judgment of conviction]" and in March 2023 he was "Returned from Parole." Id. That means that the court reviews the plaintiff's allegations regarding the denial of proper medical care under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted).

To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter,

5

Case 2:23-cv-01140-PP   Filed 10/16/23   Page 5 of 11   Document 5

836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776.

The plaintiff alleges a series of delays and indifference to his painful abdominal condition while he was incarcerated at Dodge. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640).

The plaintiff alleges that when he first knocked on his cell door to get a guard's attention, the female guard ignored him for a half hour until she had finished a phone call. The plaintiff then had to wait for the guard to call a nurse, then had to wait until the officer (or officers) finished count to receive medical attention. He says he repeatedly told the guard that his condition was an emergency, but she showed no urgency. The plaintiff then had to walk to the HSU for treatment, where a nurse insisted that he did not have a problem with his appendix even though he had a fever and was vomiting what he describes as white foam. The nurse provided him only over-the-counter treatments and sent him back to his cell.

Once back in his cell, the plaintiff's symptoms worsened, and he was unable to receive attention from any officer despite he and his cellmate calling

6
Case 2:23-cv-01140-PP   Filed 10/16/23   Page 6 of 11   Document 5

for help. After the plaintiff waited several more hours, a guard brought a nurse and other officers to the plaintiff's cell, and the nurse immediately diagnosed the plaintiff's need for emergency medical treatment. But the plaintiff *again* had to wait an hour and a half before being taken to the hospital for treatment. A doctor there told him further delay could have resulted in his appendix bursting. The plaintiff then waited nearly a half day for surgery. Once back at the prison, the plaintiff says he received no follow-up care, and his surgery site became infected. He says he thought that he might die from the lack of medical attention.

These allegations satisfy both elements of an Eighth Amendment claim. The plaintiff told the guards and nurses at Dodge that his condition was an emergency and that he was in severe pain. But no prison staff showed any urgency regarding his care and dismissed his concerns of a serious problem. Another nurse eventually diagnosed his condition as an emergency that required immediate care. But the guards and nurses who saw him did not treat his issue with any urgency, and his pain and symptoms worsened with each delay. The plaintiff also says that after his surgery, no guards or nurses at Dodge provided follow-up care, which led to an infection. The court notes that the delays the plaintiff alleges he experienced "'are common in the prison setting with limited resources.'" Brown v. Osmundson, 38 F.4th 545, 551 (7th Cir. 2022) (quoting Petties, 836 F.3d at 730). That means that later in this litigation, the defendants may be able to produce evidence showing the delays in providing the plaintiff treatment were not due to deliberate indifference but to a lack of available staff or resources. But based on the court's liberal reading of the complaint, the court finds that the allegations show the plaintiff was

7
Case 2:23-cv-01140-PP   Filed 10/16/23   Page 7 of 11   Document 5

suffering from an objectively serious medical condition and that prison staff were aware of but deliberately indifferent to that condition.

The plaintiff also alleges that he endured lengthy delays once he arrived at the hospital. The court understands the plaintiff's frustration, but delays in receiving treatment at medical facilities, even hospital emergency rooms, are common even for non-incarcerated persons. See Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (explaining that a several hour delay in receiving medical care is not "unreasonably long" because "the public often waits longer at hospital emergency rooms"). That the plaintiff had to wait until the hospital was ready to perform his surgery does not necessarily mean hospital staff were indifferent to his medical needs. Even if hospital staff unnecessarily delayed the plaintiff's surgery, the complaint does not allege whether they were state actors who may be sued under §1983. A plaintiff may bring suit under §1983 only against government officials or employees or individuals who acted "under color of state law." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009). A private party may act under color of state law only when the party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

The plaintiff does not say which hospital he was taken to or whether he was treated at the hospital under an agreement between that hospital and the State for the hospital to provide medical treatment for incarcerated persons. The complaint does not contain enough information for the court to determine whether hospital staff are appropriate defendants. The plaintiff may amend his complaint if he wishes to proceed against hospital staff and if he has additional detail to suggest that hospital staff intentionally delayed treating him. If the

8
Case 2:23-cv-01140-PP   Filed 10/16/23   Page 8 of 11   Document 5

plaintiff chooses to amend his complaint to add a claim against hospital staff, he should be prepared to show that hospital staff were state actors when they treated him and are proper defendants in a lawsuit under §1983.

The only defendant that the complaint names is the prison itself. The plaintiff cannot sue Dodge Correctional Institution because it is not a person, and he may sue only "persons" under §1983. The proper defendants are the guards, nurses and other prison staff who spoke with or saw the plaintiff yet remained indifferent to his need for treatment. The court will add a Jane Doe Correctional Officer and John/Jane Doe Nurse placeholder for these defendants because the plaintiff has not identified them. See Donald v. Cook Cnty Sheriff's Dep't, 95 F.3d 548, 555–56 (7th Cir. 1996) (noting that courts are charged with assisting *pro se* litigants who state allegations against individuals not necessarily named in the caption of their complaint).

Because the plaintiff does not know the names of the defendants he is suing, the court will add Dodge Warden Jason Benzel as a defendant for the limited purpose of helping the plaintiff identify the names of the defendants. The court will order service of the complaint and this order on Warden Benzel. Warden Benzel is *not* required to respond to the complaint. After Warden Benzel's lawyer files an appearance in this case, the plaintiff may serve discovery upon Warden Benzel (by mailing it to his attorney at the address in the attorney's notice of appearance) to get information that will help him identify the names of the defendants.

For example, the plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not stated a claim against Warden Benzel, the plaintiff's discovery requests must be limited to information or documents that

will help him learn the real names of the defendants he is suing. The plaintiff may not ask Warden Benzel about any other topic, and Warden Benzel is not obligated to respond to requests about any other topic.

After the plaintiff learns the names of the people that he alleges violated his constitutional rights, he must file a motion to substitute their names for the John and Jane Doe placeholders. Once the plaintiff identifies the defendants' names and files his motion to substitute, the court will dismiss Warden Benzel as a defendant. After the defendants have an opportunity to respond to the plaintiff's complaint, the court will set a deadline for discovery. At that point, the plaintiff may use discovery to get the information he believes he needs to prove his claims.

The plaintiff must identify the names of the John Doe defendants within **sixty days** of Warden Benzel's attorney filing a notice of appearance. If he does not do so, or does not explain to the court why he is unable to do so, the court may dismiss his case based on his failure to diligently pursue it. Civil Local Rule 41(c) (E.D.Wis.).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DIRECTS** the Clerk of Court to add Warden Jason Benzel, Jane Doe Correctional Officer and John/Jane Doe Nurse to the docket as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Warden Jason Benzel.

The court **ORDERS** that Warden Benzel is *not* required to respond to the plaintiff's complaint, but he must respond to the plaintiff's discovery requests as described in this order.

The court **ORDERS** the plaintiff to identify the real names of the Doe defendants within **sixty days** of Warden Benzel's counsel appearing in the case. If he does not do so, or does not explain to the court why he is unable to identify their real names, the court may dismiss his case based on his failure to diligently pursue it. Civil L.R. 41(c).

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by persons who are representing themselves. Entitled "Answers to Pro Se Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 16th day of October, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**